UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 18-198 (JEB) |
| | : | |
| v. | : | |
| | : | |
| DARIN CARLYLE MOORE, JR., | : | |
| GABRIEL BROWN, and | : | |
| JAMES THOMAS TAYLOR, | : | |
| Also known as "Butter," | : | |
| | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S MOTION FOR PERMISSION
TO BEGIN DNA TESTING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully moves this Court for leave to begin DNA testing. As grounds for this Motion, the United States relies on the following points and authorities, and any other points and authorities that it may cite at a hearing on the motion.

**I. Background**

On August 24, 2018, the government provided defense counsel with a letter requesting the defendants' position on the possible consumption of DNA evidence. The letter requested a response from defendants by September 6, 2018. *See* Exh. A (August 24, 2018). On September 6, 2018, the parties appeared before the Court for a status hearing and discussed, among other things, the DNA testing that the government sought to commence. At the status, Defendants advised that they would discuss the issue further with the government and provide a response. Immediately after the status, the defendants raised several issues, including 1) the possibility of having an expert present at the DNA testing; and 2) whether the vehicles (the Maxima and the Acura) could be swabbed for additional forensic evidence. Later that same day, the government

1

provided a response to both of those inquiries. *See* Exh. B (September 6, 2018, Email). In that email, the government requested that defense counsel respond by September 12, 2018. The government received no responses by September 12, 2018, and sent another follow up on September 14, 2018, attempting to obtain a response from defense counsel regarding the DNA testing. *See* Exh. C (September 14, 2018, Email). Nearly two weeks have passed since that deadline and the government has still not received a response from defense counsel.[1] The parties are scheduled to appear for a continued status hearing on November 8, 2018; although the government has obtained approval for expedited DNA testing in this case, due to the delays caused by the defendants' failure to respond, the government is concerned that the expedited testing will not be completed by the next status hearing. Accordingly, the government seeks leave from the Court to submit the items for testing and avoid further delays.

## II. Possible Consumption of DNA

The government requests that the Court adopt its prior ruling in United States v. Marlon Haight, 153 F. Supp. 3d 240 (D.D.C. Jan. 5, 2016) (JEB), as well as the rulings of every other court in this District to have ruled on the issue, and permit the government to commence testing, over defendants' objections regarding potential consumption of DNA. The Court in Haight applied the appropriate standard, reasoning:

> The Supreme Court has articulated a standard for such evidence: "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Courts have repeatedly held that, in the case of genetic material, the Government does not act in bad faith by consuming such material in testing for DNA, at least where it has a legitimate scientific reason for doing so. *See, e.g.*, United States v. Gardner, No. 14–61, 2015

---

[1] During the week of September 17, 2018, counsel for Defendant Taylor contacted the government by telephone and advised that he was going to follow up with defense counsel for Defendants Brown and Moore, but the government has not received any response since then from any of the three defendants.

> WL 1951809, at *2–3 (E.D.N.C. Apr. 29, 2015) (permitting consumption, but granting defense request that its expert attend testing); United States v. Rogers, No. 10–10140, 2010 WL 5015329, at *4–5 (D. Kan. Dec. 3, 2010) (permitting consumption); United States v. Moore, No. 2013 CF2 10140 (D.C. Sup. Ct. Apr. 11, 2014) (Opinion by Judge Frank Burgess, appended to Govt's Motion) (permitting consumption).

The Court in Haight relied upon a sworn statement that the government had submitted from Dr. Bruce Budowle, regarding the scientific principles that support the testing of the entire sample (rather than splitting of swabs), finding that the expert affidavit was "sufficient to vitiate any finding of bad faith":

> The Court finds that the Government has set forth a sufficient scientific basis for consumption here.  It substantially relies on the sworn statement of Bruce Budowle, Executive Director of the Institute of Applied Genetics at the University of North Texas Health Science Center, who is "among the foremost experts in the field of DNA profiling...." Gov't of Virgin Islands v. Byers, 941 F. Supp. 513, 523 (D.V.I. 1996).  Dr. Budowle explains that where processing items such as a gun, from which there is a lower likelihood of obtaining genetic material, the best practice is to attempt to extract DNA from the entire sample, as opposed to dividing the sample first. *See* Sworn Statement of Bruce Budowle (ECF No. 32–1), ¶ 4. The Government's approach, he avers, "is based on sound scientific principles and practices to ensure the best chances of obtaining a DNA typing result." Id. He concludes, "I recommend that scientifically the best approach is to extract the entire swab when the sample potentially may contain low levels of DNA." Id., ¶ 7.

Id. at 241.  Finally, the Court noted that the defendant would still have an opportunity to test, using the extract that the laboratory preserves during its testing:  "Defendant may still obtain some remedy here—namely, an opportunity to independently test any DNA extract not consumed in the Government's test."  Haight, 153 F. Supp. 3d at 242.

Judge Kollar-Kotelly arrived at a similar holding in United States v. Ronnie Anderson, 169 F. Supp. 3d 60 (D.D.C. March 11, 2016).  Judge Kollar-Kotelly rejected the defendant's due process and Fifth Amendment arguments, as well as his Rule 16 arguments.  Id. at 65-66.  It further endorsed the government's proposed testing protocol – the same protocol that would be employed here – concluding:

> Based on the evidence before the Court, it appears that the proposed protocol advocated by the Government is the approach utilized by ASCLD/LAB-International accredited laboratories as the most scientifically advisable protocol for retrieving interpretable results from a touch DNA sample. As such, the Court shall not require the Government to split the two sets of swabs recovered from the firearm and the magazine prior to extracting DNA as requested by Anderson. The Court notes that this ruling does not foreclose Anderson from presenting a defense, if he deems one necessary, to any DNA evidence resulting from this testing. Indeed, the extract will only be consumed in its entirety if it is deemed necessary by the laboratory to obtain interpretable results. *See* Jeanguenat Decl. ¶ 10 ("Consumption is always a last resort ...."). Anderson in his briefing, by proposing that the second half of the swabs be used by the Government if there is insufficient DNA extract from the first half of the swabs, has acknowledged the possibility that the consumption of all the DNA extract obtained from the swabs may be necessary in order to produce scientifically reliable results. *See* Budowle Decl. ¶ 5. To the extent that there is DNA extract left, it shall be preserved for defense use. Moreover, Anderson may have an independent expert review the government laboratory's work and may cross-examine any experts involved in the testing.

Id. at 68-69.

Similarly, in United States v. Quinones, 236 F. Supp. 3d 375 (D.D.C. Feb. 21, 2017), Judge Chutkan rejected the very same arguments, noting:

> The court agrees with the majority of other district judges in this Circuit to consider the issue, and finds that the Government has set forth sufficient scientific evidence and justification for consuming the collected genetic material, and this consumption would not be in bad faith.
>
> In particular, the sworn statement of Dr. Bruce Budowle, provided by the Government, stated that "the most scientifically sound approach is to extract all of the DNA on low quantity DNA samples to maximize the possibility of obtaining probative DNA information that can be used by both parties." (Gov't Resp. at 3). While Quinones offers his own expert testimony to support his argument that splitting the swab samples is a scientifically sound alternative (*see* Decl. of Marc Taylor (ECF No. 5–1)), Dr. Budowle asserts that dividing the swabs in half ahead of testing "can and will reduce the chances of obtaining DNA typing results that could inculpate but just as importantly exculpate individuals as the source of the evidentiary materials" (Decl. of Dr. Budowle ¶ 4 (ECF No. 4–2)). Given these competing declarations, the court need not wade into the scientific debate, but instead finds simply that the Government's expert supports a finding that there would be no bad faith in consuming the entirety of the sample. Therefore, the court finds that under these specific circumstances the Due Process Clause does not require the Government to preserve genetic evidence.

Id. at 377-378.; *see also* id. at 378 (rejecting Rule 16 arguments against permitting government to consume swabs).

And most recently, in United States v. Kingsbury, 317 F. Supp. 3d 476 (D.D.C. August 10, 2018), Judge Bates rejected these very same arguments, "join[ing] every other judge in this district to have considered the issue and hold[ing] that the government may consume the DNA swabs at issue in this case in conducting DNA testing." Id. at 480.  Judge Bates expressly adopted the reasoning of the decisions cited above, noting, "[t]he Court is persuaded by these prior decisions of courts in this district.  Here, as in Quinones, Anderson, and Haight, it is impossible to know whether the swabs are exculpatory, material, or discoverable under Rule 16 until they are tested.  Likewise, the government's unrebutted explanation of the scientific necessity of consuming the swabs 'vitiate[s] any finding of bad faith.' Haight, 153 F. Supp. 3d at 241. Thus, neither due process nor the Federal Rules of Criminal Procedure prohibit the government from consuming the swabs at issue here." Id. at 479.

A month has passed since the government advised the defendants of the possible consumption in this case and they have taken no action with respect to the government's proposed DNA testing protocol.  Moreover, Defendants have provided no factual or legal support that would justify the Court taking a different position in this case than it has previously taken (or that would justify this Court departing from the approach taken by every other Court in this District that has rejected swab-splitting).  Accordingly, the government seeks an Order form this Court permitting it to proceed with testing (and avoiding further delays).

### III. Conclusion

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court enter an Order finding that neither due process nor the Federal Rules of Criminal Procedure would be violated by the government's proposed DNA testing protocol and permitting the government to proceed with DNA testing in this case.

Respectfully submitted,

JESSIE K. LIU
DC Bar # 472845
United States Attorney


BY:  _____/S_____
STEVEN WASSERMAN
DC Bar No. 453251
LAURA CRANE
DC Bar No. 992454
Assistant United States Attorneys
Violent Crime and Narcotics Trafficking Section
555 4th Street, NW, Fourth Floor
Washington, DC 20530
(202) 252-7719 (Wasserman)
(202) 252-7667 (Crane)
steven.wasserman@usdoj.gov
laura.crane@usdoj.gov

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF upon counsel for defendants on this 24th day September, 2018.

_/s/ Laura Crane_____
LAURA CRANE
Assistant United States Attorney