**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JAMES THOMAS TAYLOR, *et al.*,**<br><br>**Defendants.** | **Criminal Action No. 18-198 (JEB)** |

### <u>MEMORANDUM OPINION</u>

While many people have had their plans and living situations upended by the COVID-19 pandemic, few have suffered as much as those jail inmates whose pretrial detention has extended month after month.  This case, unfortunately, provides a prime example.  Although Defendants James Taylor, Darin Moore, Gabriel Brown, and John Sweeney were originally scheduled to be tried for first-degree murder and kidnapping on April 20, 2020, the pandemic forced this judicial district to postpone all approaching jury trials.  The Chief Judge repeatedly extended the moratorium in the ensuing months, such that no trials have occurred since March 2020, and none may commence until — barring further extension — January 2021.  Protesting this delay, Taylor moves to dismiss the indictment for violations of his rights under both the Speedy Trial Act and the Sixth Amendment.  While sympathetic to Defendant's plight, the Court finds that neither right has been infringed.  It will, accordingly, deny the Motion.

**I.    Background**

"The timeline for a criminal prosecution is controlled by both the strict tabulation of days under the Speedy Trial Act and the broad, flexible standards under the Sixth Amendment Speedy Trial Clause."  <u>United States v. Homaune</u>, 898 F. Supp. 2d 153, 165 (D.D.C. 2012).  To place the background of this case in context, a brief description of only the Speedy Trial Act framework is

1

necessary.  The Court then separately details this district's response to the pandemic and the procedural history of this case.

A.  Legal Background

The Act provides that the trial of a defendant who enters a plea of not guilty shall commence within 70 days of indictment or initial appearance, whichever occurs later, and entitles the defendant to dismissal of the charges in the event such deadline is not met.  See 18 U.S.C. §§ 3161(c)(1), 3162(a)(2).  Certain periods of time, however, may be excluded from that 70-day clock.  Id. § 3161(h).  As relevant here, a court may exclude time under the Act if it finds "that the ends of justice served by [a continuance] outweigh the best interest of the public and the defendant in a speedy trial."  Id. § 3161(h)(7)(A).  Those findings must be set forth "in the record of the case, either orally or in writing."  Id.  In determining whether to grant a continuance, the court must consider a series of non-exclusive factors, including:

- "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice";

- "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section"; and

- "[w]hether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

Id. § 3161(h)(7)(B).

B.  Pandemic Responses

On March 11, 2020, the District of Columbia declared a state of emergency in response to the novel coronavirus, which causes the disease COVID-19.  See Gov't of the Dist. of Columbia, Declaration of Public Emergency: Coronavirus (COVID-19) (Mar. 11, 2020),

https://bit.ly/2Vz4gJT.  President Trump followed suit two days later.  See Proclamation No.

9994, Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)

Outbreak, 85 Fed. Reg. 15,337 (Mar. 13, 2020).  The ensuing months saw the virus take its toll

on nearly all walks of life.  To date, COVID-19 is reported to have killed over 290,000 people in

the United States and infected millions more.  See Johns Hopkins Univ. & Med., Coronavirus

Resource Center, https://bit.ly/31Y81fB (last visited Dec. 10, 2020).  To stem its spread, the

Centers for Disease Control and Prevention has recommended that the public avoid large social

gatherings and indoor spaces to the extent possible, and practice physical distancing (at least six

feet apart) from other individuals.  See Ctrs. for Disease Control & Prevention, Things to Know

about the COVID-19 Pandemic, https://bit.ly/37z0rdE (last updated Dec. 4, 2020) (CDC

Guidance).

The judicial system, unsurprisingly, has not escaped the pandemic's reach.  In this

district, Chief Judge Beryl A. Howell has issued a series of orders governing District Court

operations during the pandemic.  The first such order came on March 16, 2020, and rested upon

the following factual findings:

> (a) the state of emergency declared by the Mayor of the District of
> Columbia on March 11, 2020 and the national emergency declared
> by the President of the United States on March 13, 2020;
> (b) confirmation, as of [March 16], that over 100 people in the
> District of Columbia, Maryland and Virginia have tested positive for
> coronavirus; (b) [sic] guidance from the Centers for Disease Control
> and Prevention (CDC) and other public health authorities that
> limiting personal contacts and public gatherings are necessary to
> reduce the possibility of exposure to the virus and to slow the
> community spread of the disease; (c) guidance from the CDC that
> large events and mass gatherings can contribute to the spread of
> COVID-19 and that events and mass gatherings involving 50 or
> more people should be postponed for at least eight weeks;
> (d) guidance from the CDC that certain categories of persons are at
> higher risk of becoming seriously ill from COVID-19, including
> older adults and those with chronic medical conditions such as heart

> disease, diabetes and lung disease, and that such persons should stay
> at home as much as possible; (e) the closing of all area
> school districts for at least two weeks, which impinges on the availability
> of courthouse staff, jurors and counsel; and (f) other restrictions
> placed on public gatherings by the Mayor of the District of
> Columbia and other local jurisdictions, reflecting the seriousness of
> the need to combat the community spread of the virus[.]

Standing Order 20-9 (D.D.C. Mar. 16, 2020) at 1–2 (citations omitted).  In light of those circumstances, Chief Judge Howell ordered that all criminal and civil jury selections and trials scheduled to commence before May 11, 2020, be postponed.  Id. at 2.  The Standing Order further stated that the time period from March 17 through May 11, 2020, was excluded under the Speedy Trial Act for all criminal trials because "the ends of justice served by these continuances to protect public health and safety and the fair trial rights of the defendant outweigh the best interests of the public and any defendant's right to a speedy trial."  Id. at 2 (citing 18 U.S.C. § 3161(h)(7)(A)).  It likewise noted that judges presiding over individual criminal cases "may make additional findings and exclude additional time, as necessary and appropriate."  Id. at 2–3.

As the COVID-19 public-health crisis exploded in the ensuing months, Chief Judge Howell — in consultation with her colleagues as well as with the U.S. Attorney's Office, the D.C. Federal Public Defender, and other defense counsel — announced additional postponements of jury trials and exclusions of time under the Speedy Trial Act.  See Standing Order 20-19 (D.D.C. Apr. 2, 2020) at 2–3 (postponing trials until June 11, 2020); Standing Order 20-29 (D.D.C. May 26, 2020) at 3–4 (postponing trials until August 1, 2020); Standing Order 20-62 (D.D.C. July 9, 2020) at 2–3 (postponing trials until September 8, 2020); Standing Order 20-68 (D.D.C. Aug. 10, 2020) at 2–3 (postponing trials until November 9, 2020); Standing Order 20-89 (D.D.C. Nov. 6, 2020) at 3–5 (postponing almost all trials until January 11, 2021).  In so doing, the Standing Orders both reaffirmed prior findings and referenced additional justifications

for continuances, including rising regional rates of COVID-19 cases, stay-at-home orders, limitations on gatherings of more than ten people, and concerns regarding in-court proceedings communicated by the USAO-DC and FPD.  See, e.g., Standing Order 20-19 at 1; Standing Order 20-29 at 2; Standing Order 20-89 at 2–3 & n.4.

Although the November 6 Standing Order allowed for the resumption of a "limited number" of single-defendant trials of short duration with few and primarily local witnesses, see Standing Order 20-89 at 4, Chief Judge Howell subsequently suspended that narrow exception before any qualifying trials could begin in light of the most recent spike in local positive cases and new citywide restrictions.  See Standing Order 20-91 (D.D.C. Nov. 24, 2020) at 1–2.  At present, therefore, all jury selections and trials are on hold until at least January 11, 2021.  Id. at 2.  The District Court has not been sitting on its hands in the interim; on the contrary, it has taken "significant steps" since March in preparation for the return of jury trials, including by reconfiguring courtrooms, installing plexiglass partitions, hiring experts, conducting airflow studies, and consulting with other courts around the country about how to safely hold trials.  See Standing Order 20-89 at 3; see also U.S. Dist. Ct. for the Dist. of Columbia, Continuity of Operations Plan during the COVID-19 Pandemic (Nov. 17, 2020) at App. 8, https://bit.ly/3oiHoLi (describing plan for resuming jury trials).  There is no certainty, it is worth noting, that the January 11 resumption date will stick; Chief Judge Howell may well extend that once again given the virus's continued spread in this area.

C.  Procedural History

The Court now turns from general pandemic concerns to the specific facts of this case. The Government alleges that on June 19–20, 2018, Defendants kidnapped Andre Carlos Simmons, Jr., held him for ransom, and then killed him.  See ECF No. 41 (Superseding

Indictment) at 2–6.  As relevant here, law enforcement arrested Taylor on August 20, 2018, at which point he registered his initial appearance.  See 8/20/18 Min. Entry.  He eventually pled not guilty to the Government's superseding indictment on March 11, 2019, which charges him, Moore, Brown, and Sweeney with First-Degree Murder While Armed, Kidnapping Resulting in Death, and Conspiracy to Commit Kidnapping, among other crimes.  See 3/11/19 Min. Entry; Superseding Indictment at 1–6.  Since his arrest, Taylor has been held without bond pending trial.  See ECF No. 24 (Taylor Detention Mem.); 8/20/18 Min. Entry.

On numerous occasions in the early stages of this litigation, the Court excluded specified periods from Defendants' speedy-trial clock in order to provide the parties sufficient time to prepare for a particularly complex trial.  See 9/6/18 Min. Order; 10/22/18 Min. Order; 11/13/18 Min. Entry; 1/24/19 Min. Entry; 2/25/19 Min. Entry; 3/11/19 Min. Entry; 4/23/19 Min. Entry; 7/24/19 Min. Entry.  No small part of this delay concerned whether the Government would seek the death penalty against any Defendant, which it ultimately declined to pursue.  See ECF No. 58.  The Court eventually set a trial date of April 20, 2020, see 7/24/19 Min. Order, and ruled on a number of pretrial motions at a hearing on February 19, 2020.  See 2/19/20 Min. Order.  On March 16, 2020, however, in light of the pandemic, the Court granted the parties' joint request to continue the trial and rescheduled it for September 21, 2020.  See 3/16/20 Min. Entry.  In so doing, the Court excluded the period from March 16 through September 21 under the Speedy Trial Act's ends-of-justice provision.  Id.; 3/16/20 Tr., 11:6–13 (recording findings); see also 7/20/20 Min. Entry (recording similar exclusion).

On August 17, 2020, the Court once again postponed the trial, this time to March 8, 2021.  See 8/17/20 Min. Entry.  During a hearing, the Government explained that pandemic conditions posed serious logistical challenges to an earlier trial date, given the complexity of the case, its

expected length, and the large number of Defendants, lawyers, and out-of-state witnesses.  See ECF No. 169 (8/17/20 Tr.), 4:23–6:20.  While Taylor stated his desire to preserve any argument relating to speedy-trial violations that resulted from pandemic-related delays, he referred to similar obstacles and acknowledged that there was no "realistic possibility of trying this case in November."  Id., 7:23–8:11, 11:3–8, 11:24–12:2, 14:5–6.  The Court then issued (admittedly less than eloquent) findings under the Speedy Trial Act, excluding the period from August 17, 2020, through March 8, 2021:

> I do find that it is in the interest of justice to exclude time under the Speedy Trial Act between today and March 8th, that the Chief Judge's Standing Order covers through November 9.  It may be extended.  I also believe the logistics in this case, particularly in addition to the Chief Judge's Order, merit exclusion of time, and have merited the exclusion of time from the original April date until November, given the difficulties of trying such a case for all of the reasons that the government and defense counsel have mentioned.  I find that it is in the interest of justice, it's a very complex case, it's 16 jurors, to select jurors, jurors who can serve who are not going to be home with children who are not in school.  I understand the government's witnesses are coming from out of the jurisdiction that will impose a quarantine, that other difficulties, in meeting with witnesses, preparing for trial.  Again, logistics of being in court with eight, six defense counsel, four defendants, being able communicate at counsel table, in addition to making sure that we have jurors who can serve and are spread out and don't require a mistrial or long delays because of contagion.  I believe with all the reasons and those stated by all counsel of record, that it is in the interest of justice to exclude the time from today to March 8.

Id., 19:15–20:13; see also 8/17/20 Min. Entry.

Since that August 17, 2020, hearing, Defendants have filed a series of additional pretrial motions, see ECF Nos. 148, 149, 158, including Taylor's instant Motion to Dismiss on account of asserted speedy-trial violations.  See ECF No. 159-1 (Def. Mem.).  The Government having opposed, see ECF No. 162 (Gov't Opp.), the Court is now ready to rule.

II.    **Analysis**

The Court will first address Taylor's argument that the Government violated his rights under the Speedy Trial Act and then move to his claim that the pretrial delay also runs afoul of the Sixth Amendment.

A. Speedy Trial Act

As previously explained, although the Speedy Trial Act entitles a defendant to trial within 70 days of indictment or initial appearance, certain periods of time may be excluded from that clock. See 18 U.S.C. § 3161(c)(1), (h). A defendant bears the burden of identifying the specific time periods that he claims should not have been excluded. United States v. Rice, 746 F.3d 1074, 1077–78 (D.C. Cir. 2014). Here, Taylor challenges only the time that this Court excluded on account of the COVID-19 pandemic. See Def. Mem. at 19–23 (confining discussion to Standing Orders and Court's exclusion of time "from March 2020 until March 8, 2021"); 8/17/20 Tr., 11:24–12:2 (Taylor's counsel referencing "argument that the delays that had been attributed to COVID were not properly excluded," and noting, "That's the only piece of the speedy trial right that we're trying to preserve here."). The parties, however, never acknowledge that at least some of the time after March 2020 may also be excludable on account of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on [it]." 18 U.S.C. § 3161(h)(1)(D). For instance, Defendant Moore filed a pair of pretrial motions on September 21, 2020, and Taylor filed his own on October 30 — none of which the Court has yet scheduled for hearing. See ECF Nos. 148, 149, 158.

At any rate, and the motions notwithstanding, the Government does not dispute that at least 70 days have elapsed since March 2020, the only bases of exclusion for which are this Court's findings "that the ends of justice served by [a continuance] outweigh the best interest of

the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In order to pass

muster under the Speedy Trial Act, those determinations "must indicate that [the court]

'seriously weigh[ed] the benefits of granting the continuance against the strong public and

private interests served by speedy trials.'" Rice, 746 F.3d at 1078 (second alteration in original)

(quoting United States v. Bryant, 523 F.3d 349, 361 (D.C. Cir. 2008)). The findings that follow,

as supplemented by Chief Judge Howell's Standing Orders and this Court's prior

pronouncements, amply justify excluding the period between March 16, 2020, and March 8,

2021.

    No jury trials have occurred in this judicial district since March 2020, nor will any

commence through at least early next year. This moratorium — as mandated by the Chief

Judge's various Standing Orders — is motivated by a host of critical public-health

considerations. To name but a few: the District of Columbia remains in a state of emergency, as

has been the case since March. See Gov't of the Dist. of Columbia, Extensions of Public

Emergency and Public Health Emergency and Additional Measures in Phase Two of

Washington, DC Reopening (Oct. 7, 2020), https://bit.ly/2JWPhHi. The CDC has consistently

recommended that people avoid public indoor spaces as much as possible and limit personal

contacts, see CDC Guidance, and the Mayor has restricted the allowable size of most indoor

gatherings to ten persons. See Gov't of the Dist. of Columbia, Modified Requirements to

Combat Escalation of COVID-19 Pandemic During Phase Two (Nov. 23, 2020),

https://bit.ly/3gkTNvg. As detailed in the Chief Judge's most recent Standing Order, mid-

November witnessed an 89% increase in the seven-day average of new COVID-19 cases in the

District of Columbia. See Standing Order 20-91 at 1; see also Standing Order 20-9 at 1;

Standing Order 20-62 at 1; Standing Order 20-68 at 1 (similarly citing case increases). That

average daily case rate has continued to climb in recent days, far surpassing the previous high-water mark from early May.  See Gov't of the Dist. of Columbia, Reopening Metrics, https://bit.ly/2VLBO7Y (last visited Dec. 10, 2020).  As the region moves into the winter months, all signs point to this figure — along with accompanying hospitalizations and deaths — getting worse, not better.

Under such conditions, if the Court hypothetically held a criminal trial in violation of the Chief Judge's Standing Orders, such trial would jeopardize the health and safety of participants, courthouse staff, and the surrounding community alike.  While that risk, when mitigated by safety precautions undertaken by the Court in conjunction with public-health experts, might eventually be tolerable for certain trials of limited length and minimal complexity, the present case does not fall into that category.  On the contrary, this trial is precisely the type in which delay is particularly warranted.  It involves four co-defendants and six defense attorneys, and the Government's case-in-chief is expected to last roughly four to six weeks.  See Gov't Opp. at 13; 8/17/20 Tr., 20:6–8.  The prosecution will feature an array of witnesses, including at least five expected to travel to the District from out of state — specifically, from Arizona, California, Ohio, Texas, and Puerto Rico.  See Gov't Opp. at 13; 8/17/20 Tr., 20:3–6.  The Court also plans to empanel at least sixteen jurors, given the possibility that some may need to withdraw over the course of a lengthy trial for unforeseen personal circumstances, pandemic-related or otherwise. In addition, with four Defendants, more Deputy United States Marshals will be needed; their presence, along with other court staff, will ensure no shortage of bodies in the courtroom.

This confluence of circumstances — an unusually large number of trial participants moving around in a confined indoor space, over an extended period of time, with numerous witnesses arriving from across the country, as the pandemic shows little sign of abating, at least

in the next few months — generates a heightened potential for exposure to and transmission of the coronavirus.  Cf. ECF No. 147-1 (Notice) at 2 (Brown's counsel noting "concern" that trial participants will contract virus).  Failure to grant a continuance, accordingly, would likely render completion of the trial "impossible, or result in a miscarriage of justice."  18 U.S.C. § 3161(h)(7)(B)(i).  That is so despite the numerous steps this judicial district has undertaken in an effort to make trials possible in present conditions.

Courts across the country have reached the same conclusion, determining that the ends of justice served by postponing trials outweigh the interest of the public and defendant in a speedy trial.  See, e.g., United States v. Carrillo, No. 19-1991, 2020 WL 6707834, at *3 (D.N.M. Nov. 16, 2020); United States v. Aguerre, No. 19-75, 2020 WL 6487776, at *4 (D. Utah Nov. 4, 2020); United States v. Reese, No. 19-149, 2020 WL 5097041, at *3–4 (D. Minn. Aug. 28, 2020); United States v. Kane, No. 20-5054, 2020 WL 6434792, at *4–5 (W.D. Wash. June 9, 2020); United States v. Smith, 460 F. Supp. 3d 981, 988 (E.D. Cal. 2020).  There, as here, continuances were not caused by "judicial backlog or neglect," but rather were "necessitated by the extraordinary circumstances caused by the pandemic" and the "need for [courts] to safely plan the recommencement of criminal jury trials."  United States v. Foley, No. 18-333, 2020 WL 6198949, at *9 (D. Conn. Oct. 22, 2020).

Taylor mounts two primary arguments in response.  First, he contends that the Chief Judge's Standing Orders are insufficient by themselves to toll his speedy-trial clock.  But that effort goes nowhere, for it misapprehends the relevance of the Standing Orders to the present case.  Even if those Orders did not themselves operate to exclude time, they clearly inform this Court's own ends-of-justice exclusions by offering critical underlying facts — namely, that public-health conditions have necessitated the suspension of trials in this judicial district,

notwithstanding every effort to hold them.  See United States v. Santacruz-Cortes, No. 20-8566, 2020 WL 3884509, at *2 (D. Ariz. July 9, 2020) (determining that Chief Judge's General Order could not by itself exclude time, but noting it could inform individual district court's exclusion); Kane, 2020 WL 6434792, at *4–5 (similar).  In other words, this Court's own findings — as expressed in the record of this case and the present Opinion, though necessarily informed by the Chief Judge's Standing Orders — support the pandemic-related continuances and exclusions it ordered on March 16 and August 17, 2020, pursuant to 18 U.S.C. § 3161(h)(7)(A).

In addition, Defendant argues that this Court's Orders excluding time are "ineffective" because they do not "state[] the Court's reasoning," and because "there is no evidence that in entering them, the Court 'seriously weigh[ed]' the benefits of the postponement against Mr. Taylor's strong interest in a speedy trial."  Def. Mem. at 23 (second alteration in original). While the Court's previously cited explanation in August 2020 may have been detailed, its prior discussion in March was admittedly less so.  It is well established, however, that the Court need not "state[] [its] reasoning" at the time it grants a continuance, id., but may instead "put [its] findings on record at the time [it] rule[s] on a [Speedy Trial Act] motion to dismiss."  Bryant, 523 F.3d at 361 (citing Zedner v. United States, 547 U.S. 489, 507 (2006)); see also, e.g., United States v. Richardson, 681 F.3d 736, 739 (6th Cir. 2012); United States v. Wasson, 679 F.3d 938, 946 (7th Cir. 2012); United States v. Ferguson, 565 F. Supp. 2d 32, 42–43 (D.D.C. 2008); United States v. Reed, 253 F. Supp. 3d 52, 56 n.2 (D.D.C. 2017).  The factual findings discussed herein easily justify the continuances and exclusions the Court has granted since March.

The Court, moreover, has "seriously weighed" Taylor's interests.  Rice, 746 F.3d at 1079. For instance, its continuances were spurred in part by Defendants' repeated emphasis on the challenges of preparing for trial — especially one of this length and complexity — in a

pandemic.  In addition to seeking delays to better prepare a defense and file pretrial motions, see

ECF Nos. 148, 149, 158, counsel have cited severe impediments to communicating with their

detained clients and conducting witness preparation during the pandemic.  See 7/20/20 Tr., 20:1–

3 (Taylor's counsel expressing concerns regarding witness preparation and stating, "[W]e can't

even prep our own client, Mr. Taylor, with regard to testimony, should he end up deciding to

testify.  I can't meet with him and we certainly can't do this over the phone."); id., 7:22–8:4

(Moore's counsel noting "serious concerns" regarding inability to meet with client and prepare

for trial); id., 11:15–19, 12:1–5 (similar for Brown's counsel); Notice at 1 (Brown's counsel

emphasizing pandemic-related impediments to client's ability to "assist in his own defense" and

"counsel's ability to provide an adequate defense").  Many of their concerns understandably

relate to problems at the D.C. Department of Corrections, which has had to drastically curtail

visits and inmate movement given the virus's spread in its facilities.  See Dist. of Columbia

Dep't of Corrs., Coronavirus Prevention, https://bit.ly/36YJ3Qh (last visited Dec. 8, 2020);

Notice at 1.

        Had trial proceeded as previously scheduled, therefore, it is likely that Taylor, even

exercising "due diligence," would have been denied "reasonable time necessary for effective

preparation."  18 U.S.C. § 3161(h)(7)(B)(iv).  Indeed, this is presumably one reason why defense

counsel agreed to a March 2021 trial date.  The D.C. Circuit has emphasized similar defense

interests when affirming ends-of-justice exclusions under the Speedy Trial Act.  See Rice, 746

F.3d at 1079 (upholding sufficiency of district court's findings including that defense would not

"be in a position to adequately provide the quality of representation the defendants are entitled

to" absent delay); United States v. Lopesierra-Gutierrez, 708 F.3d 193, 205 (D.C. Cir. 2013)

(upholding district court's order based on "complexity of the case, the nature of the prosecution,

and that it would be unreasonable to expect adequate preparation . . . within the time limits

established under the Act") (citation and internal quotation marks omitted).  In both cases, as

here, the court's "conclusion that a continuance would give the defendant more time to . . .

prepare for trial demonstrated that [it] seriously weighed the defendant's interest."  United States

v. Bikundi, 926 F.3d 761, 778 (D.C. Cir. 2019).

 Moving forward now could similarly impair other defense rights.  Defendants have

suggested, for instance, that any pandemic jury may not represent a fair cross-section of the

community, given the potential for diminished representation from various sub-groups, including

those vulnerable to or living with others vulnerable to severe complications from COVID-19, as

well as caregivers whose children are not in school.  See Notice at 1; 7/20/20 Tr., 7:16–18.  Both

this Court and defense counsel, moreover, have registered concerns surrounding potential

impediments to free and fluid communication between lawyers and their clients during trial

itself.  See 8/17/20 Tr., 20:7–8; 7/20/20 Tr., 7:19–21.  These critical defense interests further

weigh against rushing to trial in the midst of a global pandemic.

 The Court is not unmindful of the fact that Taylor has spent over two years in pretrial

detention and may well have preferred to go to trial many months ago.  It likewise does not

discount the public interest in prompt assessment and resolution of criminal charges.  In the end,

however, the realities of the present pandemic ensure that the ends of justice served by a

continuance decidedly outweigh the interests of Taylor and the public in a speedy trial.  See 18

U.S.C. § 3161(h)(7)(A).  The period between March 16, 2020, and March 8, 2021, is thus

properly excluded under the Speedy Trial Act.

B. <u>Sixth Amendment</u>

"The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim." <u>Rice</u>, 746 F.3d at 1081. Numerous courts, however, have noted that "it will be an 'unusual case' in which the Act is followed but the Constitution violated." <u>Id.</u> (citations omitted); <u>see also, e.g.</u>, <u>United States v. Baker</u>, 63 F.3d 1478, 1497 (9th Cir. 1995) (suggesting that because "the Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the Sixth Amendment, . . . a trial which complies with the Act raises a strong presumption of compliance with the Constitution"). It should come as no surprise, then, that the pretrial delay in this case is fully consistent with the Sixth Amendment.

The Speedy Trial Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." This "amorphous, slippery, and necessarily relative" constitutional right "is consistent with delays and dependent upon circumstances." <u>Vermont v. Brillon</u>, 556 U.S. 81, 89 (2009) (cleaned up) (quoting <u>Barker v. Wingo</u>, 407 U.S. 514, 522 (1972)). Instead of imposing a specific timeline governing all trials, the Supreme Court has applied a balancing test that weighs four factors: 1) "[t]he length of the delay"; 2) "the reason for the delay"; 3) "the defendant's assertion of his right"; and 4) "prejudice to the defendant." <u>Barker</u>, 407 U.S. at 530–32. None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." <u>Id.</u> at 533. Rather, they "must be considered together with such other circumstances as may be relevant" as part of a "sensitive balancing process." <u>Id.</u>

The first <u>Barker</u> factor — whether the "delay before trial was uncommonly long" — "is actually a double enquiry." <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992). First, to trigger

the speedy-trial analysis, a defendant must allege an abnormally long delay "since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness."  Id. at 651–52.  Courts call this trigger a "presumptively prejudicial" delay and generally deem it satisfied if the delay exceeds one year. See Bikundi, 926 F.3d at 779; Lopesierra-Gutierrez, 708 F.3d at 203; see also Betterman v. Montana, 136 S. Ct. 1609, 1613 (2016) (explaining that speedy-trial right attaches upon arrest or indictment).  The second half of the inquiry considers, "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  Doggett, 505 U.S. at 652.  How much delay is tolerable is "dependent upon the peculiar circumstances of the case."  Barker, 407 U.S. at 530–31.

Here, the delay is "presumptively prejudicial" because over two-and-a-half years will have elapsed between Taylor's arrest and the current anticipated trial date.  While such delay triggers the Barker analysis, however, it remains shorter than others the D.C. Circuit has upheld against challenge.  See United States v. Tchibassa, 452 F.3d 918, 924, 927 (D.C. Cir. 2006) (delay of nearly eleven years); Lopesierra-Gutierrez, 708 F.3d at 202–03 (delay of three-and-a-half years); see also United States v. Young, 657 F.3d 408, 414, 420 (6th Cir. 2011) (delay of nearly eleven years).  Especially given the complex nature of this four-defendant conspiracy prosecution, the Court cannot say that the delay here is "uncommonly long."  Doggett, 505 U.S. at 651; see also Barker, 407 U.S. at 531 (noting that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").  The Court, therefore, "proceeds with skepticism to the remaining Barker factors."  United States v. Ford, 155 F. Supp. 3d 60, 69 (D.D.C. 2016).

The second criterion, as discussed, looks to the reason for the delay.  While a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," a "more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered."  <u>Barker</u>, 407 U.S. at 531.  A "valid reason," on the other hand, "should serve to justify appropriate delay."  <u>Id.</u>  Taylor takes no issue with the period from his arrest through March 2020, which the parties devoted to discovery and motions practice.  Instead, he argues — over 17 pages of briefing — that the pandemic-induced continuances beginning that month are "entirely attributable to the United States, as a result of its gross mishandling of the pandemic."  Def. Mem. at 2–19, 24–25.  This position does not assail the USAO or the prosecution, but more broadly targets the federal government as a whole, particularly the current administration.  According to Taylor, the Government "deliberately abdicated its public health responsibilities" when confronted with the pandemic and "made conscious decisions <u>not</u> to take the actions necessary to control" it.  <u>Id.</u> at 10, 19.  Those "deliberate choices," he maintains, amount to negligence on which the Government "may not rely . . . to justify the delay in this case."  <u>Id.</u> at 25.

Though not lacking in creativity, this argument does not tip the second <u>Barker</u> factor in Defendant's favor, for the delay was ultimately "fully justified and cannot be blamed" on the Government.  <u>Rice</u>, 746 F.3d at 1082 (internal quotations omitted).  Even assuming the Government could have done more to curb the pandemic's worst effects — especially in the first half of 2020 — Taylor does not gainsay that it is an extraordinary phenomenon that has curbed activities across the entire planet.  The United States, unfortunately, is far from unique in being compelled to forgo and postpone events both great and small to reduce risk of contagion.  For all his vehemence, Defendant never even attempts to establish that had the Government acted with

17

his desired urgency, jury trials in this district would not have been suspended.  Nor does he cite a single case embracing his position or otherwise attributing pandemic-related delays to the Government writ large.  Indeed, at least one court has found precisely to the contrary.  See United States v. Briggs, No. 20-410, 2020 WL 3892979, at *3 (E.D. Pa. July 9, 2020) (deeming pandemic "a substantial and compelling reason" for delay and rejecting as "meritless" defense argument that "the reason for the delay is the Government's failure to adequately handle the COVID-19 pandemic").  Because Taylor "fails to demonstrate that the [G]overnment was to blame for the delay," the second factor weighs against him.  Lopesierra-Gutierrez, 708 F.3d at 203.

The third prong — which Defendant overlooks entirely — offers him minimal assistance.  Although he asserted his right to a speedy trial in the July 20 and August 17 hearings before this Court, as well as in the present Motion, "[t]hese assertions . . . must be viewed in the light of [his] other conduct."  United States v. Loud Hawk, 474 U.S. 302, 314 (1986).  Here, Taylor's invocation of his speedy-trial right carries less weight because he did not object to the Court's pandemic-related continuances.  See United States v. King, 483 F.3d 969, 976 (9th Cir. 2007) (citing Loud Hawk, 474 U.S. at 314).  Specifically, his counsel consented to the March 2020 continuance, see 3/16/20 Min. Entry, and although he stood on his speedy-trial argument during the August 17 hearing, he acknowledged that there was no "realistic possibility of trying this case in November [2020]" and agreed to a later trial date without protest.  See 8/17/20 Tr., 8:2, 14:5–6.  Defendant has also filed a pretrial motion since that latter continuance, see ECF No. 158, even requesting an extension of the time period in which he could do so.  See ECF No. 153.

Finally, while Taylor has no doubt suffered some degree of personal prejudice from his pretrial detention, that harm does not push the fourth factor into his column.  Barker enumerates

three kinds of prejudice: 1) "oppressive pretrial incarceration"; 2) "anxiety and concern of the accused"; and 3) "the possibility that the defense will be impaired."  407 U.S. at 532.  Although Defendant focuses entirely on the first type, the Court will begin with the third, which carries the most weight because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Id.  Taylor, critically, never suggests that the delay in this case has impaired his defense in any manner whatsoever.  As the Government points out, he offers no hint of, for example, loss of records, death of witnesses, or other barriers to trial preparation.  See Gov't Opp. at 19.  That conspicuous absence is significant.  See Bikundi, 926 F.3d at 780 (finding fourth factor favored government where defendant "offer[ed] no explanation of how the delay impaired her defense"); United States v. Taplet, 776 F.3d 875, 881 (D.C. Cir. 2015) (rejecting speedy-trial claim where defendant "failed to offer a concrete explanation on how the delays prejudiced his defense"); Lopesierra-Gutierrez, 708 F.3d at 203 (similar).

     Arguing that the fourth Barker factor goes his way nonetheless, Defendant briefly reaches back to the first factor, claiming that he need not affirmatively show prejudice because it is "presumed."  Def. Mem. at 25.  That tack, however, "confuses the 'presumptive prejudice' necessary to trigger the speedy-trial inquiry with the prejudice prong of the Barker test."  Homaune, 898 F. Supp. 2d at 170.  Indeed, the Supreme Court has warned against this very mistake: "[A]s the term is used in this threshold context, 'presumptive prejudice' . . . simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry."  Doggett, 505 U.S. at 652 n.1.  It is clear, moreover, that any such presumptive prejudice "cannot alone carry a Sixth Amendment claim."  Id. at 656.  Because the other Barker criteria do not work to Taylor's advantage, and because he cannot demonstrate "specific prejudice to his defense," id., his fleeting invocation of "presumptive prejudice does not tip the

scales in his favor." <u>Tchibassa</u>, 452 F.3d at 927; <u>see also</u> <u>Doggett</u>, 505 U.S. at 656 (explaining

that if government pursues defendant "with reasonable diligence," speedy-trial claim will

generally fail "however great the delay, so long as [defendant] [can]not show specific prejudice

to his defense").

       With that avenue foreclosed, Taylor primarily relies on generalized prejudice arising

from the length of his pretrial incarceration, which has now spanned well over two years.  <u>See</u>

Def. Mem. at 25.  He references enhanced dangers stemming from detention during the COVID-

19 pandemic, and he cites the potential for additional delay if trial is ultimately postponed yet

again.  <u>Id.</u> at 25–26.  "[P]retrial delay," however, "is often both inevitable and wholly

justifiable."  <u>Doggett</u>, 505 U.S. at 656.  Without more, Taylor's confinement, while

understandably unpleasant, does not establish prejudice sufficient to support his Sixth

Amendment claim.  <u>See</u> <u>Hakeem v. Beyer</u>, 990 F.2d 750, 761 (3d Cir. 1993) (holding that

pretrial detention, coupled with delay exceeding one year, does not "permit[] an automatic

inference of enough prejudice to balance [fourth] factor in a [defendant's] favor without proof of

sub-standard conditions or other oppressive factors beyond those that necessarily attend

imprisonment"); <u>Rice</u>, 746 F.3d at 1082.

       As it has on previous occasions, the Court fully acknowledges the hardship inflicted by

Defendant's pretrial detention.  It discounts neither the length of that incarceration nor Taylor's

understandable desire for finality.  No one whose innocence is presumed should be forced to

remain in jail any longer than absolutely necessary.  The Court likewise remains committed, in

coordination with this judicial district, to ensuring he receives his day in court as soon as trial can

be held in a manner sufficient to ensure the health and safety of all participants.  At the end of

the day, however, it cannot find that the pretrial delay in this case violates the Speedy Trial

Clause of the Sixth Amendment.

## III.     Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss the

Indictment.  A separate Order so stating will issue this day.


*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 10, 2020