UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES THOMAS TAYLOR, *et al.*,<br><br>Defendants. | Criminal Action No. 18-198 (JEB) |

## MEMORANDUM OPINION

Defendant James Thomas Taylor and his three Co-Defendants — Darin Carlyle Moore, Jr., Gabriel Brown, and John Sweeney — were charged with four counts arising from the abduction and murder of a Maryland man as part of a conspiracy to hold him for ransom. After a six-week trial, the jury convicted Taylor on two of the four counts (kidnapping resulting in death and felony murder) but could not agree on the remaining two (conspiracy and first-degree murder), which the Government ultimately dismissed. The others, conversely, were all convicted on all counts. Defendant contends that the verdict as to him was inconsistent, which he suspects is the product of a jury swayed by extraneous factors. He accordingly moves for leave to communicate with the jurors to determine whether they were in fact influenced by external information in reaching their verdict. The Court will deny the Motion.

Taylor's Motion is properly brought under Local Criminal Rule 24.2(b), which provides in relevant part:

> If no request to speak with jurors is made before discharge of the jury, no party or attorney shall speak with a juror concerning the case except when permitted by the Court for <u>good cause shown in writing</u>. The Court may grant permission to speak with a juror upon such conditions as it deems appropriate, including but not limited to a requirement that the juror be examined only in the presence of the Court.

1

(Emphasis added).  The question before this Court is whether the Motion satisfies that good-cause standard.

This is not a simple bar to clear.  When a defendant moves to interview jurors after a conviction, a court should grant the motion only if "there [are] reasonable grounds for investigation."  United States v. Davis, 402 F. Supp. 2d 252, 265 (D.D.C. 2005) (citation and internal quotations omitted).  The Second Circuit, for example, has held: "Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant."  United States v. Moon, 718 F.2d 1210, 1234 (2d Cir. 1983) (citations omitted); see also United States v. Birchette, 908 F.3d 50, 58 (4th Cir. 2018) ("To show 'good cause,' . . . a party should give a trial court sound reason to believe that [juror] interviews would uncover" evidence of impropriety.).  In other words, "good cause" exists when a Rule 24.2(b) motion is grounded in something concrete, and not when a party seeks to conduct a "fishing expedition."  Birchette, 908 F.3d at 58.

That rule reflects the principle that courts should generally be "hesitant to haul jurors in after they have reached a verdict."  Moon, 718 F.2d at 1234.  Limitations on post-verdict jury interactions: "(1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) . . . protect[] jurors from harassment and the jury system from post-verdict scrutiny."  Mitchell v. United States, 958 F.3d 775, 787 (9th Cir. 2020).

Taylor's cursory Motion does not satisfy Rule 24.2(b)'s requirements.  Defendant would like to interview the jurors in this case because he believes that they were "influenced by some event or information outside the evidence and argument presented at trial."  ECF No. 335

(Motion) at 3. The presence of an external influence on the verdict would indeed be prejudicial, see, e.g., United States v. Wilson, 534 F.2d 375, 378 (D.C. Cir. 1976), and jurors may properly testify as to the existence of such influences. See Fed. R. Evid. 606(b)(2). So far so good.

The problem for Taylor, however, is that he fails to identify any evidence whatsoever that such impropriety occurred, much less "substantial and incontrovertible evidence." Moon, 719 F.2d at 1234. His only basis for inferring that the jury's decision was affected by more than just the evidence and argument from trial is that the verdicts as to him were "irrational and inconsistent." Mot. at 3. Taylor asserts that it would be "impossible to construct a scenario in which a rational juror" could conclude that he both participated in the kidnapping and murder of Andre Simmons and did not conspire with his Co-Defendants. See Mot. at 1. The "highly likely" explanation for the verdict, he thus posits, is that "at least one juror based his or her decision-making in this case on something other than the evidence presented." Id.; see also id. at 3 (noting that the inconsistent verdict "suggest[s]" that jurors were influenced by outside evidence); ECF No. 342 (Reply) at 2 ("[A]lthough an inconsistent verdict may not necessarily indicate anything improper, it may indicate exactly that."). That purported explanation, however, is mere speculation.

In any event, this Court cannot accept the central premise of his argument, which is that inconsistent verdicts are irrational and thus an indicator of impropriety. As the Government points out, and as the Supreme Court has long instructed, inconsistency in a verdict is not itself a problem. United States v. Powell, 469 U.S. 57, 65 (1984) (holding that defendant "may not upset [an inconsistent] verdict"); Dunn v. United States, 284 U.S. 390, 393 (1932) ("Consistency in the verdict is not necessary."). That rule reflects the Court's understanding that there are rational and, ultimately, permissible explanations for inconsistent verdicts. Cf. Harris v. Rivera,

454 U.S. 339, 346–47 (1981) ("We are not persuaded that an apparent inconsistency in a trial judge's verdict gives rise to an inference of irregularity in his finding of guilt that is sufficiently strong to overcome the well-established presumption that the judge adhered to basic rules of procedure."). Indeed, "where truly inconsistent verdicts have been reached, the most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Powell, 469 U.S. at 64–65 (alterations and internal quotations omitted). Instead, for example, inconsistent verdicts may be "the product of jury lenity." Id. at 65. Or they may be the result of jury mistake. Dunn, 284 U.S. at 394. In other words, inconsistent verdicts are not necessarily a sign of prejudice or the presence of any other factor that would impeach the validity of a verdict.

      Here, there is a rational and very likely explanation for the verdict, one that this Court has occasionally observed in the hundreds of trials over which it has presided. The best inference is not that the jury acted under the influence of external factors, but rather that it struggled with Taylor's connection to the crimes, which may have appeared more attenuated than that of some of his Co-Defendants. Unable to reach a clean conclusion about that question, the jury simply compromised. Id. at 394 (noting that inconsistent verdicts "may have been the result of compromise"). That compromise, like some inconsistent verdicts, may reflect lenity on the part of the jury and an unwillingness to convict on all four counts given what the jury understood to be the nature of Taylor's role in the conspiracy. Powell, 469 U.S. at 65–66. Contrary to Defendant's assertion, then, there is a highly conceivable explanation for his verdict that involves no external influences whatsoever. He is thus out of luck.

Two additional points favor denial of Taylor's Motion, too. First, had the jury been affected by extraneous factors, one would expect those factors to have affected the verdict as to all four Defendants. After all, each was charged with participation in the same crime and with the same four counts, and the prosecution often relied on the same testimony to make its case for each Defendant. Yet the jury returned an inconsistent verdict only as to Taylor. That fact suggests that the inconsistency was not the result of the jury's receipt of outside information, but rather a reflection of its grappling with Taylor's unique role in the crime.

Second, the facts and circumstances of this case render the Court particularly hesitant to subject this jury to post-verdict scrutiny. This was a high-stakes trial about a particularly violent crime. The jury, aware of this and picking up on the emotional nature of the trial, asked the Court to have the marshals escort them from the building via a private exit after they rendered their verdict. The jurors explained that they wished to avoid contact with any trial participants or with family members of Defendants. In that context, this Court predicts that the jury's willingness to speak to Taylor's counsel would be particularly low. Indeed, the Court believes that the jury would likely find any further contact about their verdict to be very much unwelcome.

At bottom, the dispositive factor here is that Taylor provided no evidence at all of an impropriety that would justify an investigation of the jury. Absent such evidence, and particularly in light of the two additional considerations just mentioned, this Court concludes that there is not good cause for Taylor to communicate with the jury.

The Court will therefore deny the Motion for Leave to Communicate. A separate Order so stating will issue this day.

6

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 20, 2022